## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BILLIE JO GILROY, | ) | |
| Plaintiff, | ) | |
| v. | ) | 2:07-cv-1582 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

### I.      Introduction

Pending before the court are cross-motions for summary judgment based on the

administrative record: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document

No. 11) and PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Document No. 10).

The motions have been fully briefed and are ripe for resolution.

Plaintiff, Billie Jo Gilroy, brought this action pursuant to 42 U.S.C. § 405(g) and

§1383(c)(3) for judicial review of the final determination of the Commissioner of Social

Security ("Commissioner") which denied her application for disability insurance benefits

("DIB") and supplemental security income ("SSI") under titles II and XVI of the Social

Security Act ("Act"), 42 U.S.C. §§ 401-403; 1381-1383f.

### II.      Background

#### A.      Facts

Plaintiff was born on April 23, 1967, and was 40 years old at the time of the hearing,

and therefore was defined as a "younger individual" pursuant to 20 C.F.R. § 404.1563 and

§416.963. R. 16. Plaintiff has a high school education and one year of additional education at the college level. R. 16. Plaintiff's relevant work history was as a cashier. R. 16. Her last day of work as a retail cashier was June 15, 2003. R. 13. Her earnings record reveals that she has acquired sufficient coverage to remain insured through December 31, 2008. R. 13.

Plaintiff alleges disability as of June 13, 2003 due to mental illness and severe depression. R. 51-55, 83, 279-82. Between February 2003 and February 2006, Plaintiff was seen for minor treatment at Latrobe Area Hospital and Westmoreland Regional Hospital on several occasions. R. 103-34, 139-45, 156-93. The conditions for which she was treated included ankle sprain, head congestion and sinusitis, shoulder pain, hives, a hand laceration, a headache, and rib pain related to a fall. R.103-34, 139-45, 156-93. In March 2006, Plaintiff was hospitalized and underwent a total abdominal hysterectomy to remedy uterine prolapse. R.196-232.

During this period, Plaintiff also complained of anxiety and depression at her primary care office visits on five different occasions. R. 175, 176, 179, 185, 187. In November 2003, Plaintiff began taking anti-depressant medication, but discontinued that medication in June 2004 as she reported it was affecting her libido. R. 182, 183, 185, 187. Plaintiff received no mental health treatment from June 2004 through July 2005, when she went to the emergency room complaining of chest pain, anxiety and shakiness. R. 111-23, 179. The record reflects that Plaintiff reported to the hospital that she had gone off of her anti-anxiety medication. R. 115, 179. Plaintiff's stress echocardiograph and chest x-ray were both negative, and she was treated with medication. R. 120, 178, 179. At primary care visits on August 18, 2005 and October 27, 2005, Plaintiff reported that her medication was not working. R. 175-76. However, Plaintiff

denied chest pain and suicidal ideations. R. 175-76. Plaintiff's primary care physician, Dr. Paul Serra, recommended that Plaintiff receive a mental health evaluation. R. 175.

On February 23, 2006, Plaintiff was evaluated by Dr. Hai Wei Wang. R. 238-40. Plaintiff reported a history of anxiety and depression that became significant in 1997. R. 238. She reported that she had been prescribed five different anti-depressant medications since 1997, but had not maintained any of them because of side effects. R. 238. At the time of the evaluation, she was not taking any anti-depressant medications. R. 238. She denied psychiatric hospitalizations for suicide attempts, but reported a history of childhood sexual abuse. R. 238. During the mental status examination, Dr. Wang reported that Plaintiff was alert, oriented and cooperative. R. 239. He also reported psychomotor slowness, an anxious mood and a tearful tense affect. R. 239. However, he also reported goal-directed speech, a logical thought process, and intact cognitive function. R. 239. Plaintiff denied hallucinations and Dr. Wang found no evidence of delusional thinking. R. 239. Dr. Wang diagnosed Plaintiff with "Major Depressive disorder with atypical feature, rule out PTSD. Also rule out bipolar disorder." R. 239. He also ascribed a Global Assessment of Functioning (GAF) score of 45. R. 239. Dr. Wang prescribed Plaintiff medication and set up a follow-up appointment. R. 239.

Plaintiff attended five further visits with Dr. Wang for medication management. R. 262, 264, 266, 269, 274. Dr. Wang noted that during these visits Plaintiff exhibited pyschomotor retardation, a sad mood, and a restricted affect. R. 262, 264, 266, 269, 274. However, Dr. Wang also reported that Plaintiff had normal speech, fair grooming, fair eye contact, a goal-directed thought process, and grossly intact cognition. R. 262, 264, 266, 269, 274. Further, she denied suicidal or homicidal ideation. R. 262, 264, 266, 269, 274.

In the period from May to November of 2006, Plaintiff went to nine counseling sessions with Diana Muka, M.A.. R. 236, 263, 265, 267, 268, 270-73, 275. Plaintiff reported continuing symptoms of anxiety and depression. R.236, 263, 265, 267, 268, 270-73, 275. Plaintiff was given several recommendations by Ms. Muka including that she should pursue pleasurable activities, go out in public with her husband, and become more assertive. R. 236, 263, 265, 267, 268, 270-73, 275.

On June 1, 2006, Michelle Santilli, Psy. D., a state agency psychologist, reviewed Plaintiff's records and concluded that Plaintiff was mildly limited in performing daily activities, and moderately limited in her ability to maintain social functioning, and maintain concentration, persistence, and pace. R. 256. Dr. Santilli also completed a mental functional capacity assessment. R. 243-45. Santilli reported that Plaintiff was markedly limited in her ability to interact appropriately with the general public, but in all other aspects was only moderately limited or not significantly limited. R. 243-44. Dr. Santilli further opined that:

> The claimant's basic memory processes are intact.  She can
> perform simple, routine, repetitive work in a stable environment.
> She can understand, retain, and follow simple job instructions,
> i.e., perform one and two step tasks.  She can make simple
> decisions. However, she experiences social anxiety and
> discomfort around strangers and is socially isolated. But, she can
> function in production oriented jobs requiring independent
> decision-making.  She can sustain an ordinary routine without
> special supervision.  She does evidence some limitations in
> dealing with work stresses and public contact.

R. 245.

### B.      Procedural History

Plaintiff protectively filed applications for DIB and SSI on January 19, 2006, alleging disability since June 15, 2003 due to mental illness and severe depression. R. 51-55, 83, 279-

82. The claim was denied. R. 26-33, 283-88. At Plaintiff's request an administrative hearing

was held on March 20, 2007 before Administrative Law Judge John J. Mulrooney, II ("ALJ").

R. 34. Plaintiff was represented by counsel and testified at the hearing. R. 296-333. Plaintiff's

husband and Irene Montgomery,  a vocational expert, also testified at the hearing. R. 296-333.

   On April 11, 2007, the ALJ rendered a decision which was unfavorable to Plaintiff

under the five-step sequential analysis used to determine disability.  R. 8-18. The ALJ

determined at step one that Gilroy was not engaging in substantial gainful activity.  R. 13. At

step two, the ALJ found that she has the following severe impairments: "bipolar disorder, major

depressive disorder and posttraumatic stress disorder."  R. 13.  At step three, the ALJ concluded

that Gilroy's impairments did not meet or equal one of the "listed impairments" set forth in 20

C.F.R. 404 Subpart P, App. 1.  R. 13. At step four, the ALJ determined that Gilroy was unable

to return to her past relevant work as a cashier.  R. 16. However, at step five, the ALJ concluded

that the government had met its burden to show that Gilroy had the residual functional capacity

to perform other work that exists in the national economy.  R. 14-16.  The ALJ's decision

became the final decision of the Commissioner on October 4, 2007, when the Appeals Council

denied Plaintiff's request to review the decision of the ALJ.  R. at 4-6.  This litigation followed.

## III.  Legal Analysis

### A. Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final

decision.  42 U.S.C. §§ 405(g).  If the Commissioner's finding is supported by substantial

evidence, it is conclusive and must be affirmed by the Court.  42 U.S.C. § 405(g); *Schaudeck v.*

*Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).   The Supreme Court has

defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v.*

*Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  It consists of more than a scintilla of evidence, but

less than a preponderance.  *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59

(3d Cir. 1988).

When resolving the issue of whether an adult claimant is or is not disabled, the

Commissioner utilizes a five-step sequential evaluation.  20 C.F.R. §§ 404.1520 and 416.920

(1995).  This process requires the Commissioner to consider, in sequence, whether a claimant

(1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the

requirements of a listed impairment, (4) can return to his or her past relevant

work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520;

*Burnett v. Commissioner of Social Security*, 220 F.3d 112,  118-19 (3d Cir. 2000) (*quoting*

*Plummer v. Apfel*, 186, F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that

there is some "medically determinable basis for an impairment that prevents him or her from

engaging in any substantial gainful activity for a statutory twelve-month period."

*Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987);  42 U.S.C. § 423 (d)(1) (1982).

This may be done in two ways:

> (1)  by introducing medical evidence that the claimant is disabled *per se* because he
> or she suffers from one or more of a number of serious impairments delineated in 20
> C.F.R. Regulations No. 4, Subpt. P, Appendix 1.  *See Heckler v. Campbell*, 461 U.S.
> 458 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777;  or,

(2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

## B.     Discussion

Plaintiff advances several arguments in her motion for summary judgment. She claims that the ALJ failed to adequately explain his assessment of Plaintiff's residual functional capacity through his failure to explain his rejection of medical and testimonial evidence and by failing to show that his assessment was supported by substantial evidence. Plaintiff reiterates her argument with regard to the treatment of medical and testimonial evidence in her argument pertaining to the ALJ's assessment failing to be supported by substantial evidence. Therefore, the Court will only address the substantial evidence argument once.  Plaintiff  further claims that the ALJ erred in failing to include required findings relating to mental functioning in his hypothetical questioning of the vocational expert. Finally, Plaintiff argues that the report of Dr. Lindsey Groves dated August 30, 2007 should be considered by the ALJ as additional evidence.

This argument was dealt with when the Court denied Plaintiff's Motion for Remand and it will not be revisited. (Docket No. 19). Defendant argues that the whole of the ALJ's determination is supported by substantial evidence. The Court agrees with Defendant.

*Medical Evidence*

First, Plaintiff takes issue with the ALJ's treatment of the medical opinions and evaluations that were considered. When considering medical evidence, an ALJ must consider "*all medical evidence in the record* and provide *adequate explanations* for disregarding or rejecting evidence..." *Akers v. Callahan*, 997 F. Supp. 648, 661 (W.D. Pa. 1998). Therefore, an ALJ may not reject a physician's findings before explaining why certain evidence has been rejected and other evidence accepted. *Terwilliger v. Chater*, 945 F. Supp. 836, 843 (E.D. Pa. 1996). In the case of a treating physician, those findings must be given greater weight that those of a physician who has examined the claimant once or not at all. *Terwilliger*, 954 F. Supp. 836 at 843. The opinions of a treating physician may only be rejected on the basis of contradictory medical evidence. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d. Cir. 1988). The ALJ may also assign weight based upon the extent to which records or reports contain supporting explanations. *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).

Plaintiff contends that the treatment of the opinions of Dr. Santilli and Dr. Wang and the resulting RFC assessment were not adequately explained by the ALJ. In his opinion, the ALJ referred to the records of Dr. Wang by their exhibit number, 10F, and the evaluation and opinion of Dr. Santilli by their exhibit number, 11F and 12F. The ALJ assessed Dr. Santilli's opinion as follows:

> The state agency medical consultant who evaluated the evidence
> concluded that the claimant had some non-exertional limitations

due to her mental impairments (Exhibits 11F and 12F). Although this opinion is entitled to less weight as it was given by a non-examining physician, it is considered a medical opinion and is entitled to some weight (20 CFR 404.1512, 404.1527, 416.912 and 416.927). The state agency physician was not afforded the opportunity to observe the claimant during the hearing or review the additional medical evidence submitted at the time.

R. 16. Dr. Santilli only found Plaintiff to have one "marked limitation" in that Plaintiff had problems dealing with the public. However, in addressing Plaintiff's difficulties in maintaining social functioning, the ALJ found that she was only "moderately limited" in this area rather than markedly limited. In order to support this rejection of the severity of Dr. Santilli's finding, the ALJ cited to Plaintiff's own claims. Plaintiff was married during the alleged disability period and was living with her spouse. R. 302. She also socialized with a friend that visited with her and some family members. R. 313-14. In the ALJ's RFC finding, he found that Plaintiff would be precluded from interacting with the public but could have occasional interaction with supervisors and co-workers, which is supported by substantial evidence as discussed above.

As to the other limitations found by Dr. Santilli, The ALJ addressed them in groups. He addressed limitations dealing with Plaintiff's "concentration, persistence or pace" by examining exhibits and testimony and concluded that Plaintiff had "moderate" limitations in that area of functioning. R. 16. This finding was consistent with that of Dr. Santilli. The ALJ relied on Dr. Wang's evaluation that Plaintiff's thought processes were logical and that her cognitive functioning was intact. He also relied on Plaintiff's report that she was able to make decisions and help her son with his homework.

The ALJ similarly addressed Plaintiff's restrictions of daily living and assessed whether Plaintiff suffered any repeated episodes of decompensation, each of extended duration. R. 16. He found that Plaintiff had mild limitations in daily living and did not suffer from repeated episodes of decompensation. R. 16. These findings were consistent with those of Dr. Santilli. The ALJ supported these contentions with Plaintiff's records which reflected her ability to take care of her personal needs without assistance, to shop when accompanied by her spouse, to clean, wash laundry, take out trash, cook and vacuum. R. 62, 309, 310. Plaintiff's treatment records further show that while she reported a worsening of symptoms in November 2006, no prior records ever showed suicidal ideation, homicidal ideation, hallucinations or delusions. R. 175-6, 238, 262, 264, 266, 269, 274. Therefore, the ALJ appropriately explained his acceptance of the findings of Dr. Santilli and supported his findings with substantial evidence.

Plaintiff also takes issue with the treatment of Dr. Wang's records. Dr. Wang diagnosed Plaintiff with major depressive disorder with atypical feature, rule out PTSD, and also rule out bipolar disorder. R. 239. He also ascribed a Global Assessment of Functioning (GAF) score of 45. R. 239.[1] Plaintiff asserts that the ALJ did not appropriately deal with the GAF asserted by Dr. Wang. However, the ALJ discusses medical and testimonial evidence that contradict Plaintiff's serious symptoms. Plaintiff's records did not indicate evidence of repeated episodes of suicidal ideation, homicidal ideation, or hallucinations or delusions. R. 175-6, 238, 262, 264, 266, 269, 274. Additionally, she changed medications repeatedly after short periods

---

[1]A GAF in the 41 to 50 range indicates "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (e.g. no friends, unable to keep job). DSM-IV-TR, p. 34.

of time and would cancel counseling sessions. R. 115, 175, 176, 179, 185, 187, 238, 265, 268.

Finally, she reported that she was able to socialize with family members and has some friends

who visit her. R. 313-14. Therefore, the ALJ appropriately supplied an explanation for his

treatment of Dr. Wang's GAF assessment and supported it with substantial evidence.

*Plaintiff's Credibility and Husband's Testimony*

Plaintiff contends that the ALJ failed to adequately explain his assessment of her

credibility. A plaintiff's subjective opinion about her own disability is entitled to credence if it

is supported by the medical record. 42 U.S.C. §§ 423 (d)(5)(A), 1382c (a)(3)(H)(I). See

Taybron v. Harris, 667 F.2d 412, 415 n.5 (3d Cir. 1981). It is the responsibility of the ALJ to

determine the credibility of a plaintiff's statements about his or her own disability.

Dobrolowsky 606 F.2d at 409). In fact, the ALJ is required to make findings on credibility. See

Kephart v. Richardson, 505 F.2d 1089 (3d Cir. 1974).

In this case, the ALJ made a thorough evaluation of Plaintiff's credibility and also

assessed her husband's testimony. R. 14-16. Plaintiff and her husband reported that she does

not like to be left home alone and gets severely anxious in public. R. 61-63, 321-27. However,

Plaintiff also reported that she was able to go shopping, clean, do laundry, take out the trash,

and vacuum. R. 309-10. Additionally, Plaintiff married during the alleged disability period and

socialized with a  friend and some family. Plaintiff also alleges that she has difficulty sustaining

concentration and remembering. R. 65. However, she reports that she is capable of making

decisions and helping her child with his homework. R. 64, 312. Dr. Wang also reported that

Plaintiff's thought processes were logical and her level of cognitive functioning was assessed as

being intact. R. 239.

11

In November of 2006, Plaintiff reported a worsening of symptoms. R. 15, 91-96. However, she provided no medical evidence for this contention. All prior records indicated that she denied suicidal ideation, homicidal ideation, hallucinations or delusions. R. 15, 175-6, 238, 262, 264, 266, 269, 274. There was also evidence that Plaintiff's mood improved when she was appropriately taking her medications. R. 274. Plaintiff, on numerous occasions, stopped taking medications after short periods of time because of reported side effects. R. 115, 175, 176, 179, 185, 187, 238, 265, 268. She also cancelled counseling sessions. R.265, 268. Considering all of the evidence of record, the ALJ's assessment of Plaintiff's credibility was supported by substantial evidence. The ALJ's treatment of Plaintiff's husband's testimony was also appropriate as it reported Plaintiff's ailments and capacities similarly to Plaintiff.

*Hypothetical Question to the VE*

Finally, Plaintiff contends that the ALJ's hypothetical question to the vocational expert did not fairly set forth all of Plaintiff's limitations that were supported by the record. The "[t]estimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). "The ALJ will normally ask the expert whether, given certain assumptions about a claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy." *Id.* Although "the ALJ may proffer a variety of assumptions to the expert, the expert's testimony concerning alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Id.*; *see also Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). If

12

a hypothetical question does not reflect all of a claimant's impairments that are supported by the record, "the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *see also Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004); *Burns*, 312 F.3d at 123.

In this case, the ALJ posed the following hypothetical to the vocational expert:

> Assume in my hypothetical the person had no exertional limitations but the person was limited to simple, routine, repetitive tasks not performed in a fast paced environment, involving only simple work related decisions and in general relatively few workplace changes. Assume that my hypothetical person was limited to occupations that involve no more than occasional interaction with supervisors and co-workers. When I say interaction I don't just mean being at the same place at the same time with people, I mean actually having to subsequently interact with them. Assume that the same person is limited to occupations that require no interaction with members of the general public as I've defined the term interaction.

R. 328. In response to this hypothetical, the expert opined that Plaintiff could perform a number of positions present in the national economy. R. 329.

Plaintiff argues that the ALJ did not address all categories that were necessary in his hypothetical, which would include activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. However, when addressing Plaintiff's limitations in the activities of daily living, the ALJ determined in his opinion that she could "take care of personal needs without assistance" and "did not require frequent rest breaks during the day." R. 15. He addressed this category of function by asserting that the hypothetical person "had no exertional limitations." R. 238.When addressing Plaintiff's limitations in social functioning, the ALJ acknowledged that Plaintiff made claims that she was "severely anxious in public", but had married, and socialized with family and a friend. R. 238. Therefore, in his

hypothetical, the ALJ acknowledged his findings by stating that the hypothetical person could only have occasional interaction with supervisors and co-workers, and no interaction with the general public. R. 238.

Additionally, the ALJ found that while the Plaintiff alleged difficulty sustaining concentration and remembering, her though processes were logical and her cognitive functioning was intact and she was able to understand and follow instructions and make decisions. R. 15. The ALJ addressed this finding in his hypothetical by stating that the hypothetical individual "was limited to simple, routine, repetitive tasks not performed in a fast paced environment, involving only simple work related decisions." R. 15. The ALJ did not address episodes of decompensation in his hypothetical because he did not find Plaintiff to have any impairments in this area. Therefore, the ALJ appropriately addressed all of Plaintiff's limitations in his hypothetical.

## IV.      Conclusion

Under the Social Security regulations, a federal district court reviewing the decision of the Commissioner denying benefits has three options. It may affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration. 42 U.S.C. § 405(g) (sentence four). In light of an objective review of all evidence contained in the record, the Court finds that the ALJ's properly addressed the evidence presented in this case and constructed an appropriate hypothetical question to the vocational expert. Therefore, the ALJ's decision was supported by substantial evidence.

Defendant's motion for summary judgment will therefore be granted, and Plaintiff's motion for summary judgment will be denied.

An appropriate Order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BILLIE JO GILROY,** ) | |
| **Plaintiff,** ) | |
| **v.** ) | **2:07-cv-1582** |
| ) | |
| **MICHAEL J. ASTRUE, Commissioner** ) | |
| of Social Security, ) | |
| **Defendant.** ) | |

### ORDER OF COURT

**AND NOW**, this 27ᵗʰ day of October, 2008, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

1.     Defendant's Motion for Summary Judgment (Document No. 11) is **Granted.**

2.      Plaintiff's Motion for Summary Judgment (Document No. 10) is **Denied.**

3.     The Clerk will docket this case as closed.


BY THE COURT:



s/Terrence F. McVerry
United States District  Court Judge



cc:      Robert Savoy, Esquire
         Email:rbsavoy@comcast.net

         Paul Kovacs, Esquire
         Email: paul.kovac@usdoj.gov